# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| SCOTT THOMPSON, Individually and For Others Similarly Situated,<br>　　　　　Plaintiff,<br><br>v.<br><br>XTO ENERGY, INC,<br>　　　　　Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Scott Thompson (Plaintiff) brings this lawsuit individually and on behalf of all current and former Directional Supervisors (Putative Class Members) who worked for XTO Energy (XTO) and were paid a day rate with no overtime compensation. Plaintiff brings this action to recover unpaid overtime wages and other damages from XTO under the Fair Labor Standards Act (FLSA) and New Mexico Minimum Wage Act (NMMWA).

2. This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201 *et. seq.*, to recover overtime wages, and a Federal Rule of Civil Procedure 23(b) (3) class action pursuant to the state law of New Mexico to recover unpaid wages, overtime wages, and other applicable penalties.

3. Plaintiff and the Putative Class Members worked for XTO as Directional Supervisors.

4. Plaintiff and the Putative Class Members regularly worked for XTO in excess of forty (40) hours each week.

5. But XTO did not pay them overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6. Instead of paying overtime as required by the FLSA, XTO improperly classified Plaintiff and the Putative Class Members as independent contractors ineligible for overtime, and paid them a day rate with no overtime compensation. This practice violates the overtime requirements of the FLSA. *See* 29 U.S.C. § 201 *et. seq.*

7. The decision by XTO not to pay overtime compensation to Plaintiff and the Putative Class Members was neither reasonable nor in good faith.

8. XTO knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

9. Plaintiff and the Putative Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid overtime and other damages owed under the NMMWA as a class action pursuant to Federal Rule of Civil Procedure 23.

## JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq.*

11. The Court has supplemental jurisdiction over the NMMWA claims under 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over XTO because XTO is incorporated in Delaware.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because XTO is a resident entity of this District and is subject to the court's personal jurisdiction with respect to the civil action in question.

## THE PARTIES

14. Plaintiff worked for XTO from approximately September 2018 through March 2020 as a Directional Supervisor.

15. Throughout his employment, XTO paid Plaintiff a flat daily rate for each day worked regardless of the total hours worked in a workweek ("day rate pay plan").

16. The relationship between Plaintiff and XTO rises to the level of an employee-employer relationship.

17. Plaintiff's consent to be a party plaintiff is attached as **Exhibit A**.

18. Plaintiff brings this action on behalf of himself, and all similarly situated Directional Supervisors who were paid by XTO's day rate pay plan. XTO classified these Directional Supervisors as independent contractors, paid them a flat amount for each day worked, and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

19. The FLSA Collective of similarly situated workers consists of:

**All individuals in the Directional Supervisor position employed by or working on behalf of XTO and paid according to its day rate pay plan in the past three (3) years (Putative Class Members).**

20. Second, Plaintiff represents a class of similarly situated Directional Supervisors under the NMMWA pursuant to Federal Rule of Civil Procedure 23.

21. The NMMWA Class is defined as:

**All individuals in the Directional Supervisor position employed by or working on behalf of XTO and paid according to its day rate pay plan in the past three (3) years in New Mexico (New Mexico Class).**

22. Collectively, the FLSA Class and NMMWA Class is defined as the Day Rate Workers.

23. The identities of the Day Rate Workers can be readily ascertained from XTO's records.

24. XTO is a company doing business throughout the United States.

25. XTO is a Delaware corporation, licensed and doing business in New Mexico, and may be served through its registered agent for service of process: **Corporation Service Company,** 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808.

### ADDITIONAL FACTS

26. XTO is a staffing company that provides recruitment services to the oil and gas industry, among others. *See generally* https://www.XTOenergy.com (Last visited June 6, 2022).

27. To complete its business objectives, it hires personnel (like Plaintiff) to perform services for its customers.

28. For example, Plaintiff was hired by XTO to provide services for XTO Energy in throughout the Delaware Basin in Texas and New Mexico.

29. Many of these individuals were classified by XTO as independent contractors and deemed ineligible for overtime compensation by XTO.

30. Many of these individuals worked for XTO on a day rate basis (without overtime pay).

31. These workers make up the proposed collective of Day Rate Workers.

32. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

33. Throughout Plaintiff's employment with XTO, XTO improperly classified him as an independent contractor exempt from overtime.

34. Throughout Plaintiff's employment with XTO, XTO paid him on a day rate basis.

35. Plaintiff and the Day Rate Workers work(ed) for XTO under its day rate pay scheme, classified as independent contractors.

36. But XTO hired and treated these Day Rate Workers just like regular, even if sometimes short-term, employees.

37. During the relevant period, these Day Rate Workers regularly worked for XTO in excess of 40 hours a week for weeks or months at a time.

38. Usually the Day Rate Workers worked well over 60 hours a week.

39. The Day Rate Workers worked in the field with other wellsite workers.

40. During the relevant period, these Day Rate Workers worked for XTO on a day-rate basis.

41. During the relevant period, these Day Rate Workers were classified by XTO as independent contractors.

42. During the relevant period, these Day Rate Workers were not paid overtime for the hours they worked for XTO in excess of 40 hours each week.

43. While exact job titles and job duties may differ, XTO subjected these Day Rate Workers and other wellsite workers to the same or similar illegal pay practices for similar work.

44. Plaintiff reported directly to XTO management-level employees.

45. Throughout his employment with XTO, Plaintiff regularly worked more than 40 hours each week without receiving overtime compensation. Instead, Plaintiff received a day-rate for each day worked, regardless of how many hours he worked in a day or week.

46. During his time with XTO, Plaintiff regularly worked 12 or more hours each day, often for weeks at a time.

47. When Plaintiff was scheduled to work by XTO, Plaintiff normally worked well over 60 hours a week.

48. To the contrary, Plaintiff's work was governed entirely by XTO.

49. The Day Rate Workers performed the same general job duties performed by Plaintiff. That is work to assist in the furtherance of oil production.

50. The Day Rate Workers worked the same or similar schedule worked by Plaintiff, regularly working more than 40 hours each week. Plaintiff's work schedule is typical of the Day Rate Workers.

51. During the relevant period, XTO classified Plaintiff and the Day Rate Workers as independent contractors and paid them a day-rate basis with no overtime compensation.

52. Plaintiff and the Day Rate Workers never received a salary.

53. If Plaintiff and the Day Rate Workers did not work in a week, they did not receive a guaranteed amount of at least $684.

54. Plaintiff and the Day Rate Workers received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

55. Without the job performed by Plaintiff and the Day Rate Workers, XTO would not have been able to complete its business objectives.

56. Plaintiff and the Day Rate Workers were economically dependent on XTO and relied on XTO for work and compensation.

57. XTO determined the amount and type of compensation paid to Plaintiff and the Day Rate Workers.

58. XTO set Plaintiff's and the Day Rate Workers' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for XTO.

59. Plaintiff and the Day Rate Workers worked in accordance with the schedule set by XTO.

60. XTO prohibited Plaintiff and the Day Rate Workers from subcontracting out the work they are assigned by XTO.

61. Plaintiff and the Day Rate Workers had to follow XTO's policies and procedures.

62. Plaintiff and the Day Rate Workers had to adhere to the quality standards put in place by XTO.

63. Plaintiff and the Day Rate Workers did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, XTO provided Plaintiff and the Day Rate Workers with the programs, equipment, and facilities necessary for them to perform the work required of them.

64. Plaintiff and the Day Rate Workers did not provide the significant equipment and programs they worked with daily, such as the survey equipment, office space, computers, and other necessary equipment.

65. XTO made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Plaintiff and the Day Rate Workers work.

66. Plaintiff and the Day Rate Workers do not incur operating expenses like rent, payroll, and marketing.

67. Plaintiff and the Day Rate Workers did not market their services while employed by XTO.

68. While employed by XTO, Plaintiff and the Day Rate Workers worked exclusively for XTO.

69. XTO set Plaintiff's and the Day Rate Workers' work schedule.

70. At all relevant times, XTO maintained control, oversight, and direction of Plaintiff and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

71. XTO controlled Plaintiff's and the Day Rate Workers' pay.

72. Likewise, XTO controlled Plaintiff's and the Day Rate Workers' work.

73. Plaintiff's and the Day Rate Workers' work had to adhere to the quality standards put in place by XTO.

74. Plaintiff and the Day Rate Workers were not required to possess any unique or specialized skillset (other than that maintained by all other wellsite workers in their respective positions) to perform their job duties.

75. XTO knew Plaintiff and the Day Rate Workers regularly worked for 12 or more hours a day for weeks at a time.

76. XTO's records reflect the fact that Plaintiff and the Day Rate Workers regularly worked far in excess of 40 hours in certain workweeks.

77. Plaintiff and the Day Rate Workers did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Plaintiff and the Day Rate Workers were paid according to XTO's day rate pay plan.

78. XTO set the schedules and compensation of the Day Rate Workers; supervised them; and required them to adhere to strict guidelines, directives, and XTO's policies and procedures.

79. The work Plaintiff and the Day Rate Workers performed was an essential part of XTO's core businesses.

80. XTO controlled Plaintiff's and the Day Rate Workers' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

81. XTO exercised control over the hours and locations Plaintiff and the Day Rate Workers worked, the tools and equipment they used, the rigs they worked on, and the rates of pay they received.

82. Even though Plaintiff and the Day Rate Workers may have worked away from XTO's offices without the constant presence of XTO's supervisors, XTO still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

Case 1:22-cv-00784-VAC   Document 1   Filed 06/13/22   Page 9 of 19 PageID #: 9

83. The daily and weekly activities of Plaintiff and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by XTO.

84. Virtually every job function was predetermined by XTO, including the tools and equipment used, the schedule of work, and related work duties.

85. XTO prohibited Plaintiff and the Day Rate Workers from varying their job duties outside of predetermined parameters and required Plaintiff and the Day Rate Workers to follow its policies, procedures, and directives.

86. Plaintiff and the Day Rate Workers performed routine job duties largely dictated by XTO.

87. All of the Day Rate Workers performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

88. All of the Day Rate Workers worked similar hours and were denied overtime as a result of the same illegal pay practice.

89. All of the Day Rate Workers worked in excess of 40 hours each week and often worked more than 60 hours in a workweek.

90. XTO uniformly denied Plaintiff and the Day Rate Workers overtime for the hours they worked in excess of 40 hours in a single workweek.

91. Plaintiff and the Day Rate Workers were not employed on a salary basis.

92. Plaintiff and the Day Rate Workers did not, and never did, receive guaranteed weekly compensation of at least $684 irrespective of days worked (i.e., the only compensation they received was the day rate they were assigned for all hours worked in a single day or week).

93. The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

94. XTO violated the FLSA because XTO, via its broadly-applied and illegal day rate pay plan, denied Plaintiff and the Day Rate Workers of overtime pay for the hours they worked in excess of 40 in a single workweek.

95. XTO knew Plaintiff and the Day Rate Workers worked more than 40 hours in a week.

96. XTO knew, or showed reckless disregard for whether, Plaintiff and the Day Rate Workers were improperly classified as independent contractors (as opposed to employees).

97. XTO knew, or showed reckless disregard for whether, Plaintiff and the Day Rate Workers were not exempt from the FLSA's overtime provisions.

98. XTO knew, or showed reckless disregard for, whether the Day Rate Workers were entitled to overtime under the FLSA.

99. XTO utilized a day rate pay plan despite clear and controlling law that states that Plaintiff and the Day Rate Workers were XTO's *non-exempt* employees, and not independent contractors.

100. Accordingly, XTO's pay policies and practices blatantly violated (and continue to violate) the FLSA and the NMMWA.

## COVERAGE UNDER THE FLSA

101. Plaintiffs incorporates all preceding paragraphs.

102. The FLSA Collective of similarly situated workers consists of:

> **All individuals in the Directional Supervisor position employed by or working on behalf of XTO and paid according to its day rate pay plan in the past three (3) years (Putative Class Members).**

103. At all times hereinafter mentioned, XTO was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

104. At all times hereinafter mentioned, XTO was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

105. At all relevant times, XTO has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

106. At all relevant times, XTO has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

107. In each of the past 3 years, XTO's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

108. During the respective periods of Plaintiff and the Day Rate Workers' employment by XTO, the Day Rate Workers provided services for XTO that involved interstate commerce for purposes of the FLSA.

109. XTO uniformly applied its policy of improperly classifying the Day Rate Workers, including Plaintiff, as independent contractors.

110. XTO uniformly applied its policy of paying its Day Rate Workers, including Plaintiff, a day rate with no overtime compensation.

111. XTO applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

112. XTO's practice of misclassifying its employees as independent contractors violates the FLSA.

113. XTO's uniform compensation scheme paying a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

114. By improperly classifying the Day Rate Workers as independent contractors instead of employees, and by paying its workers a day rate with no overtime compensation, XTO violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

115. As a result of this policy, XTO and the Day Rate Workers did not and do not receive overtime payment as required by the FLSA.

116. The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 102.

117. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of XTO.

### CAUSES OF ACTION
### COUNT ONE: FLSA VIOLATIONS

118. Plaintiff incorporates the preceding paragraphs by reference.

119. At all relevant times, Plaintiff and the Day Rate Workers are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

120. XTO violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

121. In violating the FLSA, XTO knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

122. Because XTO knew, or showed reckless disregard for whether, its pay practices violated the FLSA, XTO owes these wages for at least the past three years.

123. XTO knew or should have known its pay practices were in violation of the FLSA.

124. The decision and practice by XTO to not pay overtime was neither reasonable nor in good faith.

125. Accordingly, Plaintiff and the Day Rate Workers are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees, and costs.

### COUNT TWO: NMMWA VIOLATIONS

126. Plaintiff incorporates the preceding paragraphs by reference.

127. Plaintiff brings this claim under the NMMWA as a Rule 23 class action.

128. The NMMWA Class is defined as:

**All individuals in the Directional Supervisor position employed by or working on behalf of XTO and paid according to its day rate pay plan in the past three (3) years in New Mexico (New Mexico Class).**

129. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of XTO.

130. XTO's conduct and application of its day rate pay plan violates the NMMWA (NMSA § 50-4-22).

131. At all relevant times, XTO was an employer within the meaning of the NMMWA and was subject to the requirements of the NMMWA.

132. At all relevant times, Plaintiff and each New Mexico Class Member have been "employees" within the meaning of the NMMWA.

133. The NMMWA requires employers like XTO to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week.

134. Plaintiff and each member of the New Mexico Class are entitled to overtime pay under the NMMWA, for all hours worked in excess of forty (40) in a single workweek.

135. XTO has a policy and practice of misclassifying Plaintiff and each member of the New Mexico class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

136. XTO violated the NMMWA by failing to pay Plaintiff and other class members any overtime premium for hours worked over forty (40) per week.

137. In violating the NMMWA, XTO acted willfully, without a good faith basis and with reckless disregard of clearly applicable New Mexico law

138. Plaintiff and the New Mexico Class Members have suffered damages and continue to suffer damages as a result of XTO's acts or omissions as described herein; though XTO is in possession and control of necessary documents and information from which Plaintiff and the New Mexico Class Members would be able to precisely calculate damages.

139. Plaintiff and each member of the New Mexico Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

140. Plaintiff and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by XTO, as provided by the NMMWA.

141. The improper pay practices at issue were part of a continuing course of conduct, entitling Plaintiff and New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

### FLSA COLLECTIVE ACTION ALLEGATIONS

142. All previous paragraphs are incorporated as though fully set forth herein.

143. Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiff.

144. Other similarly situated employees have been victimized by XTO's patterns, practices, and policies, which are in willful violation of the FLSA.

145. The Putative Class Members are defined in Paragraph 102.

146. XTO's failure to pay any overtime compensation results from generally applicable policies and practices and does not depend on the personal circumstances of the individual Putative Class Members.

147. Thus, Plaintiff's experiences are typical of the experiences of the Putative Class Members.

148. The specific job titles or precise job requirements of the various Putative Class Members does not prevent collective treatment.

149. All of the Putative Class Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

150. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

151. Indeed, the Putative Class Members are non-exempt employees entitled to overtime after forty (40) hours in a week.

152. XTO has employed a substantial number of similarly situated Directional Supervisors within the three-year period preceding the filing of the instant lawsuit.

153. Upon information and belief, these Putative Class Members are geographically dispersed, residing and working in locations across the United States.

154. Because the Putative Class Members do not necessarily have fixed work locations, they may work in different states across the country in the course of a given year.

155. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and XTO will retain the proceeds of its rampant violations.

156. Moreover, individual litigation would be unduly burdensome to the judicial system.

157. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

158. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 102 and notice should be promptly sent.

### New Mexico Class Allegations

159. Plaintiff brings his NMMWA claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by XTO to work in New Mexico during the three-year period preceding the filing of the instant lawsuit..

160. Class action treatment of Plaintiff's NMMWA claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

161. The number of New Mexico Class Members is so numerous that joinder of all class members is impracticable.

162. Plaintiff is a member of the New Mexico Class, his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

163. Plaintiff and his counsel will fairly and adequately represent the class members and their interests.

164. Plaintiff's claims share common issues of law and fact with the claims of the New Mexico Class.

165. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

166. Accordingly, the New Mexico Class should be certified as in Paragraph 128

### JURY DEMAND

167. Plaintiff demands a trial by jury

### RELIEF SOUGHT

168. WHEREFORE, Plaintiff prays for judgment against XTO as follows:

   a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Putative Class as defined in herein and requiring XTO to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

   b. For an Order certifying the New Mexico Class as defined herein, and designating Plaintiff and his counsel to represent the interests of the New Mexico Class;

   c. For an Order approving the form and content of a notice to be sent to all potential FLSA Putative Class Members advising them of the pendency of this litigation and of their rights with respect thereto;

   d. For an Order awarding Plaintiff (and those FLSA Putative Class Members who have joined in the suit) back wages that have been improperly withheld;

   e. For an Order pursuant to Section 16(b) of the FLSA finding XTO liable for unpaid back wages due to Plaintiff (and those FLSA Putative Class Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Putative Class Members who have joined in the suit);

    f.  For an Order finding XTO liable for all unpaid overtime to the New Mexico Class under the NMMWA and awarding Plaintiff and the New Mexico Class back wages that have been improperly withheld;

    g.  For an Order awarding the costs and expenses of this action;

    h.  For an Order awarding attorneys' fees;

    i.  For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

    j.  For an Order awarding the Plaintiff a service award as permitted by law;

    k.  For an Order compelling the accounting of the books and records of XTO, at XTO's own expense;

    l.  For an Order providing for injunctive relief prohibiting XTO from engaging in future violations of the FLSA and the NMMWA, and requiring XTO to comply with such laws going forward; and

    m.  For an Order granting such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| Date: June 13, 2022 | Respectfully submitted, |
| Of Counsel: | FARNAN LLP |
| Michael A. Josephson<br>Andrew W. Dunlap<br>Carl A. Fitz<br>JOSEPHSON DUNLAP LLP<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>713-352-1100 – Telephone<br>713-352-3300 – Facsimile<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br>awhite@mybackwages.com | /s/ Michael J. Farnan<br>Sue L. Robinson (Bar No. 100658)<br>Brian E. Farnan (Bar No. 4089)<br>Michael J. Farnan (Bar No. 5165)<br>919 North Market St. 12th<br>Floor Wilmington, DE 19801<br>Telephone: 302-777-0300<br>Facsimile: 302-777-0301<br>srobinson@farnanlaw.com<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com |
| Richard J. (Rex) Burch<br>BRUCKNER BURCH, PLLC<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>713-877-8788 – Telephone<br>713-877-8065 – Facsimile<br>rburch@brucknerburch.com | *Attorneys for Plaintiff and the Putative Class Members* |